UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TRIANDUS TABB, R41511, ) | |
| ) | |
| Petitioner, ) | |
| ) | Case No. 14-cv-2023 |
| v. ) | |
| ) | Judge John W. Darrah |
| RICK HARRINGTON, Warden, ) | |
| Menard Correctional Center, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

Petitioner Triandus Tabb is currently serving a twelve-year sentence for attempted first-degree murder in addition to a four-year consecutive sentence for attempted aggravated vehicular hijacking. Tabb seeks a writ of *habeas corpus* against the Menard Correctional Center Warden, Rick Harrington, pursuant to 28 U.S.C. § 2254. Before the Court is Tabb's Petition for a Writ of *Habeas Corpus* in which he raises four grounds for relief: (1) the state violated petitioner's constitutional rights by withholding exculpatory evidence; (2) the state destroyed evidence in bad faith that could potentially exonerate the petitioner; (3) the state violated petitioner's rights by destroying evidence in bad faith; and (4) absent these Constitutional violations, petitioner would have established his innocence. Petitioner filed a Motion for Discovery, Expansion of the Record, and an Evidentiary Hearing [33] pursuant to the Rules Governing Section 2254 cases in the United States District Courts. That Motion is granted in part and denied in part.

1

# BACKGROUND[1]

The factual findings of a state trial or appellate court are presumed true in a federal *habeas* proceeding unless the petitioner can rebut the presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The petitioner has not challenged the appellate court's summary of facts. Accordingly, the following facts are drawn from the appellate court's opinions.

On September 6, 2003, at approximately 1:20 p.m., Salvador Gomez was the driver of a vehicle stopped at a red light at the intersection of 51st Street and Ashland Avenue in Chicago. *People v. Tabb*, No. 03 CR 24960, at C19. While stopped at the light, Gomez was approached by a tall black male with a handgun. *Id* at C20. The man ordered Gomez to exit to vehicle. Gomez then attempted to remove the handgun from his assailant's hand. At this point, the man stepped back and shot Gomez three times. Then the man ran away.

On October 25, 2003, Gomez was called to the police station and asked to identify the shooter in a lineup. He did not identify anyone in the first lineup. Later that day, Gomez viewed a second lineup. At that time, he identified Petitioner, Triandus Tabb, as the shooter.

At trial, a jury convicted Tabb of attempted first-degree murder, aggravated battery with a firearm, and aggravated vehicular hijacking. *Id.* at C18. Tabb was sentenced to a twelve year sentence that merged for purposes of the attempted first degree murder and the aggravated battery charges. Additionally, he was sentenced to a consecutive four year sentence for aggravated vehicular hijacking. On appeal, the court vacated the aggravated battery charge under the one-act, one-crime doctrine but affirmed the other convictions. *Id.* at C43.

---

[1] The Illinois Appellate Court also summarized these facts in its opinion, *People v. Tabb*, 870 N.E.2d 914 (Ill. App. Ct. 2007).

Tabb then filed a post-conviction petition in state court pursuant to 725 ILCS 5/122-1, *et seq*. The petition claimed that Tabb was entitled to relief because (1) he was innocent; and (2) he was given ineffective counsel who failed to fully investigate and subpoena witnesses. The trial court granted the State's motion to dismiss the petition.

On appeal, the dismissal was reversed and the petition proceeded to an evidentiary hearing. In preparation for the hearing, Tabb sent the State a discovery request for any written notes related to the interviews of individuals who were named in the post-conviction petition. One of these witnesses included Nelly Gomez, the wife of Salvador Gomez. Petitioner had spoken with Nelly during the post-conviction investigation. At that time, Nelly allegedly stated to Petitioner's investigator that, while she and her husband were waiting in the police station before Salvador went into the second lineup, they had seen an 8 inch x 11 inch photograph of the Petitioner. After Gomez identified the shooter in the second lineup, Nelly was told by a police officer that the shooter was the same person as the man in the 8x11 photograph.

During post-conviction proceedings, the State interviewed Nelly. The notes from that interview were subsequently destroyed pursuant to office policies. Instead, the State provided Tabb with interview reports that they claim contained the information that had been contained in the destroyed notes.

The state trial court held an evidentiary hearing to determine whether Petitioner is "actually innocent." At the evidentiary hearing, Petitioner presented Dr. Berkowitz, an expert who testified that the lineup may have been unreliable. The trial court barred Dr. Berkowitz's testimony. Petitioner also sought to introduce affidavits of two newly discovered eyewitnesses, David Carr and Betty Stuckey, both of whom swore that Petitioner was not the shooter. Carr passed away before he could testify. At the hearing, Nelly testified that she did not tell

3

Petitioner's investigator that she and her husband had seen a picture of Petitioner before the lineup. Nelly also denied that Gomez had seen a picture of Petitioner before the lineup. Petitioner's investigator claimed that Nelly had told her that Gomez viewed a large picture of the Petitioner just before viewing the lineup. After the post-conviction hearing, the court found Stuckey's testimony incredible.

Tabb now brings the instant *habeas* petition, asserting four claims for relief on the following grounds: (1) the state violated Tabb's constitutional rights by withholding exculpatory information and evidence of an improper and suggestive lineup during which Gomez identified Tabb; (2) the state destroyed, in bad faith, potentially useful evidence of the tainted lineup and independent eyewitness testimony that Tabb was not the shooter; (3) the state violated Tabb's rights by destroying, in bad faith, potentially useful evidence of the tainted lineup and independent eyewitness interviews; and (4) absent the constitutional violations, as well as the trial court entering a conviction based on evidence that did not prove Tabb guilty beyond a reasonable doubt and erring in certain evidentiary rulings that denied Tabb a fair trial, Tabb would have been found innocent.

## LEGAL STANDARD

A *habeas* petitioner is not entitled to discovery as a matter of course. *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). "[U]nder the Rules Governing Habeas Corpus, 'the district judge . . . may employ a variety of measures in an effort to avoid the need for an evidentiary hearing.'" *Matta-Ballesteros v. Henman*, 896 F.2d 255, 259 (7th Cir. 1990) (quoting *Blackledge v. Allison*, 431 U.S. 63, 81 (1977)). Rule 6(a) of the Rules Governing § 2254 Cases provides that "[a] judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil Procedure and may limit the extent of discovery." § 2254 Rule 6(a). In order to be granted

discovery, Petitioner must: "(1) make a colorable claim showing that the underlying facts, if proven, constitute a constitutional violation; and (2) show 'good cause' for the discovery." *Hubanks v. Frank*, 392 F.3d 926, 933 (7th Cir. 2004) (citations omitted). Good cause does not exist where the facts alleged do not provide a basis for relief. *Id.* (citing *Matta-Ballesteros*, 896 F.2d at 259.)

## ANALYSIS

### *Lineup*

Petitioner's first claim is that the state violated Tabb's constitutional rights by withholding exculpatory information and evidence of an improper and suggestive lineup, during which Gomez identified Tabb. For a *Brady* prosecutorial misconduct claim: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-82 (1999). A *habeas corpus* petition must survive procedural default before a federal court may address the merits of the petition. *Coleman v. Thompson*, 501 U.S. 722, 729-730 (1991). Generally, there are three ways a procedural default occurs: (1) where the petitioner fails to raise a federal constitutional issue in the state courts (*Bocian v. Godinez,* 101 F.3d 465, 469 (7th Cir. 1996)); (2) when a state court rejects a petitioner's claims pursuant to an adequate and independent state procedural or substantive ground (*Thompson*, 501 U.S. at 729-30); and (3) if the petitioner completely failed to assert the claim in the state court (*Moleterno v. Nelson*, 114 F.3d 629, 634 (7th Cir. 1997)). This claim was not raised until Petitioner's petition for leave to appeal from the appellate court's denial of his state post-conviction petition appeal.

Respondent argues that this issue has been procedurally defaulted because Petitioner failed to raise it throughout the state proceedings. A petitioner "must present both the operative facts and the legal principles that control each claim to the state judiciary; otherwise, he will forfeit federal review of the claim." *Wilson v. Briley*, 243 F.3d 325, 327 (7th Cir. 2001) (citing *Rodriguez v. Scillia*, 193 F.3d 913, 916 (7th Cir. 1999); *Bocian*, 101 F.3d at 469). "[F]our factors . . . bear upon whether the petitioner has fairly presented the claim in state court: (1) whether the petitioner relied on federal cases that engage in constitutional analysis; (2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; (3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and (4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation." *Id.* at 327. While Petitioner argued that eyewitness identification was unreliable due to a variety of factors, he did not argue that the lineup was unconstitutionally and purposefully tainted by the police or that prosecutors knew about the allegedly tainted lineup.

Tabb did not raise his suggestive-lineup claim on direct appeal.[2] He also failed to raise it during his state post-conviction proceedings.[3] A petitioner may be excused from a procedural default if he or she can demonstrate cause for the default and actual prejudice as a result of the

---

[2] Tabb raised four claims on appeal to the Illinois Appellate Court, asserting that the trial court erred when it: (1) denied Tabb the opportunity to cross-examine two State witnesses regarding their involvement with narcotics; (2) denied Tabb's motion for a directed finding, despite the State not having presented evidence which could have supported the jury verdict of guilty beyond a reasonable doubt; (3) convicted Tabb when the State failed to prove that he was guilty beyond a reasonable doubt; and (4) entered three convictions that were predicated upon the same actions, in violation of the one-act, one-crime doctrine.

[3] Tabb raised two post-conviction claims: (1) newly discovered eyewitness evidence establishes that Tabb is actually innocent; and (2) Tabb's trial counsel was ineffective for failing to subpoena key witnesses in the case.

alleged violation of federal law or that a failure to review the claim will result in a fundamental miscarriage of justice. *Schaff v. Snyder,* 190 F.3d 513, 526 (7th Cir. 1999). Cause sufficient to excuse a procedural default is defined as "some objective factor external to the defense" thatprecludes the petitioner's ability to pursue his or her claims in state court. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Ordinarily, this requires a showing of some external impediment preventing counsel from constructing or raising the claim. *Murray*, 477 U.S. at 488.

Petitioner argues that there was sufficient cause for the default and actual prejudice. Specifically, Tabb asserts that the cause was beyond the defense's control because only the police were present at the lineup. Tabb further posits that the destruction of the notes from Nelly Gomez's interview was outside of his control. Finally, Tabb argues that it was not until he spoke with Nelly during post-conviction proceedings that he learned of the photograph which he claims caused the suggestive lineup. Petitioner has shown that there was cause for the default, as he was unaware of the possible claim until Nelly allegedly informed his investigators that the lineup was tainted. Petitioner has also shown that actual prejudice would have resulted from the concealment of a purposefully tainted lineup. Therefore, Petitioner's procedural default as to the allegedly tainted lineup is excused.

*Destruction of Notes*

Petitioner also claims that the state destroyed potentially useful evidence of the tainted lineup and independent eyewitness testimony that Tabb was not the shooter and potentially useful evidence of a tainted lineup and independent eyewitness interviews. Specifically, Petitioner argues that the destruction of notes from post-conviction interviews with Nelly and Stuckey was a violation of his right to due process because the notes contained exculpatory evidence.

7

State collateral proceedings are not subject to *habeas* relief. "[T]he federal role in reviewing an application for *habeas corpus* is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the *habeas* calculation." *Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998). While the Seventh Circuit has not ruled on this precise issue, their decisions support the reasoning in the Third Circuit's decision. *See Montgomery v. Meloy*, 90 F.3d 1200, 1206 (7th Cir. 1996) (holding "[n]o constitutional provision or federal law entitles [petitioner] to any state collateral review'); *see also Jackson v. Duckworth*, 112 F.3d 878, 880 (7th Cir. 1997) ("federal *habeas corpus* could provide no relief for errors in state collateral review unless the review violates some other constitutional right"). However, if the destroyed notes contained information regarding the allegedly tainted lineup, then the notes would implicate the original trial.

*Discovery*

Petitioner has made a colorable claim showing that the underlying facts, if proven, constitute a constitutional violation as to his allegations of a tainted lineup and the destruction of notes, insofar as those notes evidence an allegedly tainted lineup. Therefore, Petitioner's request for production of "all documents concerning, relating to, referring to, or applicable to whether or not Nelly Gomez and/or Salvador Gomez saw, were presented with, or were in the same room with a photo of Triandus Tabb prior to the trial and conviction of Triandus Tabb in *Illinois v. Tabb*, No. 03-CR-24690, including but not limited to, all communications related to the same" is granted. Petitioner's request to issue subpoenas to testify at a deposition to the CCSAO, Nelly Gomez, Investigator McGreal, and Investigator Ryan is granted for the limited purpose of

inquiring about the allegedly tainted lineup and any post-conviction interview notes related to the allegedly tainted lineup. All other discovery requests are denied.

## CONCLUSION

For the reasons discussed above, Petitioner's Motion [33] for discovery, except as provided above, and expansion of the record pursuant to the Rules Governing Section 2254 cases in the United States District Courts is denied. Petitioner's Motion for an evidentiary hearing is denied without prejudice to refile if warranted by the additional discovery.

Date: _____June 11, 2015_____     _____
                                                                           JOHN W. DARRAH
                                                                           United States District Court Judge