UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

TRIANDUS TABB,           )
                         )
         Petitioner,     )  Case No. 14-cv-2023
    v.                   )
                         )  Judge John W. Darrah
KIM BUTLER,              )
                         )
         Respondent.     )

# MEMORANDUM OPINION AND ORDER

Petitioner Triandus Tabb was sentenced to twelve years' imprisonment for attempted first-degree murder in addition to a four-year consecutive sentence for attempted aggravated vehicular hijacking.[1] Tabb seeks a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. Tabb's writ of *habeas corpus* raises four grounds for relief: (1) the state violated Petitioner's Constitutional rights by withholding exculpatory evidence; (2) the state destroyed evidence in bad faith that could potentially exonerate Petitioner; (3) the state violated Petitioner's rights by destroying evidence in bad faith; and (4) absent these Constitutional violations, Petitioner would have established his innocence. After discovery was granted, Petitioner filed a Motion for Summary Judgment [61]. For the reasons stated below, Petitioner's Motion for Summary Judgment [61] and § 2254 Amended Petition for Writ of *Habeas Corpus* [26] are denied.[2]

---

[1] Petitioner was released from the Menard Correctional Center and placed on mandatory supervised release on December 28, 2015. The proper respondent is now Tim Christianson, Acting Chief of Parole, Illinois Department of Corrections. *See* Rules Governing Section 2254 Cases 2(a) ("If the petitioner is currently in custody under a state-court judgment, the petition must name as respondent the state officer who has custody.").

[2] The analysis for the disposition of Petitioner's § 2254 Amended Petition for Writ of *Habeas Corpus* and his Motion for Summary Judgment is the same; therefore, both will be considered in this Memorandum Opinion and Order.

## LOCAL RULE 56.1

Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the party contends there is no genuine issue for trial." *Ammons v. Aramark Uniform Servs.*, 368 F.3d 809, 817 (7th Cir. 2004). Local Rule 56.1(b)(3) requires the nonmoving party to admit or deny every factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). A nonmovant's "mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). In the case of any disagreement, the nonmoving party must reference affidavits, parts of the record, and other materials that support his stance. Local Rule 56.1(b)(3)(B). To the extent that a response to a statement of material fact provides only extraneous or argumentative information, this response will not constitute a proper denial of the fact, and the fact is admitted. *See Graziano v. Vill. of Oak Park*, 401 F. Supp. 2d 918, 936 (N.D. Ill. 2005). Similarly, to the extent that a statement of fact contains a legal conclusion or otherwise unsupported statement, including a fact that relies upon inadmissible hearsay, such a fact is disregarded. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997). Pursuant to Local Rule 56.1(b)(3)(C), the nonmovant may submit additional statements of material facts that "require the denial of summary judgment."

## BACKGROUND

The factual findings of a state trial or appellate court are presumed true in a federal *habeas* proceeding unless the petitioner can rebut the presumption with clear and convincing

evidence. 28 U.S.C. § 2254(e)(1). Petitioner has not challenged the appellate court's summary of facts. Accordingly, the following facts are drawn from the appellate court's opinions.[3]

On September 6, 2003, at approximately 1:20 p.m., Salvador Gomez was the driver of a vehicle stopped at a red light at the intersection of 51st Street and Ashland Avenue in Chicago. While stopped at the light, Gomez was approached on the driver's side of his vehicle by a tall black male with a handgun. The man ordered Gomez to exit the vehicle. Gomez then attempted to remove the handgun from his assailant's hand. At this point, the man stepped back, shot Gomez three times, and then ran away. On October 25, 2003, Gomez was called to the police station and asked to identify the shooter in a lineup. He did not identify anyone in the first lineup. Later that day, Gomez viewed a second lineup; and, at that time, he identified Petitioner as the shooter.

After a jury trial, Petitioner was convicted of attempted first-degree murder, aggravated battery with a firearm, and aggravated vehicular hijacking. The attempted first-degree murder and the aggravated battery convictions merged and Tabb was sentenced to twelve years' imprisonment. Additionally, he was given a consecutive sentence of four years for the aggravated vehicular hijacking conviction. On appeal, the court vacated the aggravated battery charge under the one-act-one-crime doctrine but affirmed the other convictions. Tabb then filed a post-conviction petition in state court pursuant to 725 ILCS 5/122-1, *et seq.* The petition claimed that Tabb was entitled to relief because (1) he was innocent, and (2) he was given

---

[3] The Illinois Appellate Court summarized the facts in its opinions, *People v. Tabb*, 870 N.E.2d 914 (Ill. App. Ct. 2007) and *People v. Tabb*, 2013 IL App (1st) 121748-U (Ill. App. Ct. 2013).

3

ineffective counsel who failed to fully investigate and subpoena witnesses. The trial court granted the state's motion to dismiss the petition.

On appeal, the dismissal was reversed, and the petition proceeded to an evidentiary hearing. In preparation for the hearing, Tabb sent the state a discovery request for any written notes related to the interviews of individuals who were named in the post-conviction petition. One of these witnesses included Nelly Gomez, the wife of Salvador Gomez. Petitioner had spoken with Nelly during post-conviction investigation. At that time, Nelly allegedly indicated that while she and her husband were waiting in the police station, before Salvador went into the second lineup, they had seen an eight-by-eleven-inch photograph of Petitioner. After Gomez identified the shooter in the second lineup, Nelly was told that the shooter was the same person as the man in the photograph.

During post-conviction proceedings, the state interviewed Nelly. The notes from the state investigators' interview were destroyed pursuant to office policies. The state provided Tabb with interview reports that contained the information that had been contained in the destroyed notes. At the evidentiary hearing, Petitioner presented Dr. Berkowitz, an expert who testified that the lineup may have been unreliable. The trial court barred Dr. Berkowitz's testimony. Petitioner also sought to introduce affidavits of two newly discovered eyewitnesses, David Carr and Betty Stuckey, both of whom swore that Petitioner was not the shooter. Carr passed away before he could testify. After the post-conviction hearing, the court found Stuckey's testimony incredible.

Tabb brought a federal *habeas* petition, asserting four claims for relief on the following grounds: (1) the state violated Tabb's Constitutional rights by withholding exculpatory

information and evidence of an improper and suggestive lineup during which Gomez identified Tabb; (2) the state destroyed, in bad faith, potentially useful evidence of the tainted lineup and independent eyewitness testimony that Tabb was not the shooter; (3) the state violated Tabb's rights by destroying, in bad faith, potentially useful evidence of the tainted lineup and independent eyewitness interviews; and (4) absent the Constitutional violations of allowing conviction, based on evidence that did not prove Tabb guilty beyond a reasonable doubt and erring in certain evidentiary rulings that denied Tabb a fair trial, Tabb would have been able to establish his innocence.

Discovery was granted regarding the issues of the allegedly tainted lineup and the destruction of notes.[4] The following facts from that discovery are taken from the parties' statements of undisputed material facts submitted in accordance with Local Rule 56.1. Prior to the lineup identification, Nelly and Salvador Gomez were taken to a police station and led into an office filled with cubicles. (Petitioner's Statement of Facts ("PSOF"), ¶ 4; Respondent's Statement of Facts ("RSOF"), ¶ 83.) An officer removed Salvador from the room. (RSOF, ¶ 83.) Nelly waited in the office for forty-five minutes and began to look around. (*Id.* ¶ 84.) Nelly noticed a stack of files with a photograph on top, about two to three cubicles down. (*Id.*) Salvador and the officer returned to the office, where Salvador told Nelly that he had identified the shooter. (*Id.* ¶ 85.) Nelly asked to see a picture of the shooter, and the officer showed her the photograph she had noticed earlier. (*Id.* ¶¶ 86-87.)

On July 22, 2011, two investigators for the Cook County State's Attorney's Office, Joanne Ryan and Thomas McGreal, interviewed Stuckey. (PSOF, ¶ 47.) After this interview,

---

[4] The parties deposed Nelly Gomez, Joanne Ryan, Thomas McGreal, and Maurice Macklin, a corporate representative of the Cook County State's Attorney's Office.

5

Stuckey changed several aspects of her affidavit. (*Id.* ¶¶ 47-48.) On August 17, 2011, Petitioner filed a document during post-conviction proceedings which indicated that Nelly would testify that Salvador saw a photograph of Petitioner just before the lineup identification. (*Id.* ¶ 53.) On August 18, 2011, Ryan and McGreal interviewed Nelly. (*Id.* ¶ 54.) During the interview, Nelly was asked to review the statement she gave regarding Salvador being exposed to a photograph of Petitioner. (*Id.*) After this interview, Ryan made corrections to the statement, which Nelly signed-off on. (*Id.*)

McGreal took notes during the interview with Nelly. (RSOF ¶ 99.) McGreal prepared a report summarizing the interview and, after the report was approved by a supervisor, destroyed his notes. (*Id.*) McGreal similarly destroyed his notes from the Stuckey interview. (PSOF ¶ 68.) McGreal and Ryan testified that it was a practice of the Cook County State's Attorney's Office to destroy interview notes after completing a memorandum summarizing a witness interview and that memorandum's being approved by a supervisor. (RSOF ¶ 93.) McGreal and Ryan did preserve their notes on one occasion when ordered by a court. (*Id.* ¶ 98.) The Assistant State's Attonrey handling the state post-conviction matter, Darren O'Brien, did not tell Ryan or McGreal that a discovery request had been made, seeking interview notes in this case. (*Id.* ¶ 100.) The practice of destroying notes is not memorialized in a written document. (*Id.* ¶ 95.)

## LEGAL STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Courts deciding summary judgment motions must view facts "in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v.*

6

*Harris*, 550 U.S. 372, 380 (2007). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the initial burden of establishing that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, "[t]he nonmoving party must point to specific facts showing that there is a genuine issue for trial." *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009). The evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). Factual disputes do "not preclude summary judgment when the dispute does not involve a material fact." *Burton v. Downey*, 805 F.3d 776, 783 (7th Cir. 2015).

## ANALYSIS

### Brady Claim

Petitioner first claims the state violated Tabb's Constitutional rights by withholding exculpatory information and evidence of an improper and suggestive lineup during which Gomez identified Tabb. Respondent argues that this issue has been procedurally defaulted because Petitioner failed to raise it throughout the state proceedings. "An application for a writ of *habeas corpus* on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State; or there is an absence of available State corrective process." 28 U.S.C. § 2254(b)(1). A *habeas corpus* petition must survive procedural default before a federal court may address the merits of the petition. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991). Generally, there are

7

three ways a procedural default occurs: (1) where the petitioner fails to raise a federal constitutional issue in the state courts (*Bocian v. Godinez*, 101 F.3d 465, 469 (7th Cir. 1996)); (2) when a state court rejects a petitioner's claims pursuant to an adequate and independent state procedural or substantive ground (*Thompson*, 501 U.S. at 729-30); and (3) if the petitioner completely failed to assert the claim in the state court (*Moleterno v. Nelson*, 114 F.3d 629, 634 (7th Cir. 1997)). This claim was not raised until Petitioner's Petition for Leave to Appeal from the appellate court's denial of the appeal of his post-conviction petition.

A petitioner "must present both the operative facts and the legal principles that control each claim to the state judiciary; otherwise, he will forfeit federal review of the claim." *Wilson v. Briley*, 243 F.3d 325, 327 (7th Cir. 2001) (citing *Rodriguez v. Scillia*, 193 F.3d 913, 916 (7th Cir. 1999); *Bocian*, 101 F.3d at 469). "Four factors . . . bear upon whether the petitioner has fairly presented the claim in state court: (1) whether the petitioner relied on federal cases that engage in constitutional analysis; (2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; (3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and (4) whether the petitioner alleged a pattern of facts that is well within the mainstream of constitutional litigation." *Id.* at 327. While Petitioner argued that the eyewitness identification was unreliable due to a variety of factors, he did not argue that the lineup was unconstitutionally and purposefully tainted by the police or that prosecutors knew about the allegedly tainted lineup. Petitioner relied on cases dealing with evidence destruction and the science of eyewitness perception but not on any cases analyzing potentially tainted lineup identifications. Petitioner did not raise a *Brady* claim using

this information until filing his post-conviction PLA. Petitioner did not fairly preserve this issue by raising operative facts and controlling legal principles.

A petitioner may be excused from a procedural default if he or she can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that a failure to review the claim will result in a fundamental miscarriage of justice. *Schaff v. Snyder,* 190 F.3d 513, 526 (7th Cir. 1999). Cause sufficient to excuse a procedural default is defined as "some objective factor external to the defense" which precludes the petitioner's ability to pursue his or her claims in state court. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Ordinarily, this requires a showing of some external impediment preventing counsel from constructing or raising the claim. *Id.* "A showing that the factual or legal basis for a claim was not reasonably available to counsel or that interference by officials made compliance impracticable would constitute cause." *Id.* (internal citations omitted.) As discussed in the June 11, 2015, Memorandum Opinion and Order granting discovery, Petitioner is excused from his procedural default as he was unaware of the possible claim until Nelly allegedly informed his investigators that the lineup was tainted, and actual prejudice could have resulted from the concealment of a purposefully tainted lineup.

However, even though it was not procedurally defaulted, Petitioner's *Brady* claim has no merit. To sustain a *Brady* prosecutorial misconduct claim: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281-282 (1999). The facts do not show

9

that Salvador Gomez saw the photograph of Petitioner prior to the lienup or that the photograph was placed there in order to induce a false identification. The facts only show that Salvador Gomez was in the same room as the photograph, albeit several cubicles away. As mentioned above, Nelly had earlier said, during the post-conviction investigation, that she and Salvador saw the photograph of petitioner. However, during the post-conviction hearing, Nelly testified that she was sitting alone when she saw the photograph of Petitioner. Nelly was cross-examined, and impeachment evidence was introduced through the testimony of Cynthia Estes. Petitioner has not shown that a *Brady* violation occurred.[5]

*Youngblood Claim*

Petitioner also claims that the state destroyed potentially useful evidence of the tainted lineup and independent eyewitness testimony that Tabb was not the shooter and potentially useful evidence of a tainted lineup and independent eyewitness interviews. Specifically,

---

[5] Even if the lineup was shown to be suggestive, Gomez's identification would have been admissible if "under the 'totality of the circumstances,' the identification was reliable even though the identification procedure was suggestive." *Neil v. Biggers*, 409 U.S. 188, 198-99 (1972). The out-of-court identification is admissible unless "the challenged procedure was unduly suggestive" and, under the totality of the circumstances "the identification was [in]sufficiently reliable to prevent misidentification." *Gregory-Bey v. Hanks*, 332 F.3d 1036, 1045 (7th Cir. 2003). Petitioner suggests that several factors made the lineup identification unreliable: the briefness of the encounter, Gomez's inconsistent memory of how long the encounter lasted, Gomez's duress during the encounter, that seven weeks elapsed between the encounter and the identification, and the fact that Gomez was shot and required major surgery. (Dkt. 31, pps 7-8.) The reliability of an identification procedure is considered using the following factors: "1) the opportunity of the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation; and (5) the length of time between the crime and the confrontation." *Hanks*, 332 F.3d at 1045 (citing *Biggers*, 409 U.S. at 199-200). Gomez had ample opportunity to view the criminal, paid a great deal of attention, and demonstrated a high level of certainty. Gomez's identification was sufficiently reliable to overcome the allegedly suggestive procedure.

Petitioner argues that the destruction of notes from post-conviction interviews with Nelly and Stuckey was a violation of his due process right because the notes contained exculpatory evidence.

However, state collateral proceedings are not the purview of *habeas* relief. *See Quince v. Crosby*, 360 F.3d 1259, 1261-62 (11th Cir. 2004) ("[W]hile *habeas* relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for *habeas* relief."). "[T]he federal role in reviewing an application for *habeas corpus* is limited to evaluating what occurred in the state or federal proceedings that actually led to the petitioner's conviction; what occurred in the petitioner's collateral proceeding does not enter into the *habeas* calculation." *Hassine v. Zimmerman*, 160 F.3d 941, 954 (3d Cir. 1998).

While the Seventh Circuit has not ruled on this precise issue, their decisions support the reasoning in the Third Circuit's decision. *See Montgomery v. Meloy*, 90 F.3d 1200, 1206 (7th Cir. 1996) (holding "[n]o constitutional provision or federal law entitles [Petitioner] to any state collateral review'); *see also Jackson v. Duckworth*, 112 F.3d 878, 880 (7th Cir. 1997) ("federal *habeas corpus* could provide no relief for errors in state collateral review unless the review violates some other constitutional right"). Furthermore, Petitioner has produced no evidence indicating that the destroyed notes from either interview contained any sort of exculpatory information other than the logical fallacy that, since they were destroyed, they must have contained exculpatory information. In support of his argument, Petitioner relies on *Steidl v. Fermon*, 494 F.3d 623 (7th Cir. 2007), in which that petitioner was granted *habeas* relief after discovering exculpatory evidence that had been concealed by the state. However, that case

11

involves a discussion of qualified immunity in a § 1983 suit and only mentions that the plaintiff was granted *habeas* relief as a background fact.

State Court Adjudication

If a claim was adjudicated on the merits in state-court proceedings, an application for a writ of *habeas corpus* shall not be granted unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The reviewing court applies a highly deferential standard when evaluating the state court's rulings, and the state court's decision is given the benefit of the doubt. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002); *Griffin v. Pierce*, 622 F.3d 831, 841 (7th Cir. 2010).

Petitioner claims that the Illinois Appellate Court opinion was contrary to, and involved an unreasonable application of, clearly established federal law. The Illinois Appellate Court found that there was "no due process violation as a result of the investigators' destruction of their written notes." *People v. Tabb*, 2013 WL 3379128, *17, 2013 IL App (1st) 121748-U, ¶ 66 (Ill. App. Ct. 2013.) The appellate court went on to state that "defendant has not suggested that the destroyed notes were material or exculpatory *at all*." *Id.* (emphasis added). Petitioner argues that this holding was contrary to *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988), which held that a "failure to preserve potentially useful evidence does not constitute a denial of due process of law" if a criminal defendant cannot "show bad faith on the part of the police." *Youngblood*, 488 U.S. at 58. Specifically, Petitioner argues that the court used the incorrect standard of

12

exculpatory evidence as opposed to potentially exculpatory evidence. However, the appellate court statement cited above would reasonably include both actual and potentially exculpatory evidence. Moreover, that court also found that "[t]here is no evidence that the State destroyed the notes as a result of defendant's discovery request and therefore no evidence of bad faith from the State." *Tabb*, 2013 WL 3379128, at *17. Therefore, even if the state court was mistaken in its application of one *Youngblood* factor, exculpatory evidence versus potentially exculpatory evidence, it correctly applied the bad faith factor and found that there was no due-process violation.

Petitioner goes on to argue that the state appellate court made an unreasonable determination of no bad faith. Again, the Petitioner presumes that the notes contained materially exculpatory evidence because they were destroyed and that therefore they were destroyed in bad faith. Petitioner also argues that there was no evidence in the record that would allow the appellate court to find that the notes were destroyed as typical practice. However, the record reflects that this was stated by an assistant state's attorney during a hearing on whether there was a discovery violation. *See* (Dkt. 31-19, p. 104:11-16) (". . . but as it is typically practiced when reports are done, the notes are always destroyed.").[6] There is also no evidence that the substance of the interviews with Nelly and Stuckey was not included in the summary report. Finally, inconsistencies in the reports do not rise to the level of evidence of bad faith in this case.

Petitioner's *Yougblood* claim was adjudicated on the merits in state-court proceedings; and the state court's determination was not contrary to, or an unreasonable application of, clearly

---

[6] McGreal and Ryan's deposition testimony, mentioned above, that they were not ordered to preserve the notes and have previously done so in another case when ordered to do so, further rebuts any inference of bad faith.

13

established federal law. Nor was there an unreasonable determination of the facts in light of the evidence presented. Petitioner's *Youngblood* claim is barred.

Merits

Even assuming that Petitioner's *Youngblood* claim is not barred, the claim has no merit. As discussed above, there is no evidence that the interview notes contained even potentially exculpatory information. Petitioner had the opportunity to examine the investigators and other witnesses during the post-conviction hearing and to conduct discovery during this proceeding. Petitioner assumes that mistakes or inconsistencies in the reports show "an affirmative determination to exclude information." (Dkt. 62, p. 16.) But there is no evidence that this is the case. Additionally, use of the word "policy", as opposed to the word "practice", when McGreal discussed the destruction of his notes, does not demonstrate that he was lying under oath and is, therefore, unreliable. There is also no reason to believe that the notes were destroyed in bad faith, especially where the investigators were unaware of the discovery request. *See* (RSOF, ¶ 100.) Further, to the extent that Petitioner relies on the destruction of notes as a discovery violation, the Supreme Court has "never held or suggested that the existence of a pending discovery request eliminates the necessity of showing bad faith on the part of police." *Illinois v. Fisher*, 540 U.S. 544, 548 (2004). Petitioner's *Youngblood* claim is without merit.

*Actual Innocence*

The only claim not included in Petitioner's Motion for Summary Judgment is an actual innocence claim as grounds for federal *habeas* relief. Specifically, Petitioner claims that evidence of a tainted lineup would have led to a verdict of not guilty. "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal

14

*habeas* relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera v. Collins*, 506 U.S. 390, 400 (1993). As discussed above, Petitioner's independent grounds for *habeas* relief are unavailable; therefore, no independent claim of actual innocence is cognizable.

*Certificate of Appealability*

A certificate of appealability may issue from "the final order in a *habeas corpus* proceeding in which the detention complained of arises out of process issued by a State court . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A district court must issue or deny a certificate of appealability when it denies a petition for *habeas* relief. If the court denies a certificate, a party may not appeal the denial but may seek a certificate from the court of appeals under Federal Rules of Appellate Procedure 22.

To obtain a certificate of appealability under § 2253, a petitioner must demonstrate the denial of a constitutional right. "When the district court denies a *habeas* petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). "Where a district court has rejected the constitutional claims on the merits . . . the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.*

15

Petitioner has not made a substantial showing of the denial of a constitutional right. However, Petitioner has shown that reasonable jurists would find the denial of a constitutional right debatable, specifically whether the Supreme Court decision in *Youngblood* applies to the preservation of evidence in a post-conviction proceeding. Therefore, a certificate of appealability shall issue on the specific question of whether there is a right to *habeas corpus* relief for errors in state collateral review, in this case, destruction of interview notes prepared for the collateral review hearing, where the collateral review did not violate some other constitutional right related to the detention of the Petitioner. *See* 28 U.S.C.A. § 2253(c)(3) (stating that certificate of appealability "shall indicate which specific issue or issues satisfy the showing" required).

## CONCLUSION

For the reasons stated below, Petitioner's Motion for Summary Judgment [61] and § 2254 Amended Petition for Writ of *Habeas Corpus* [26] are denied   A certificate of appealability shall issue.

Date:      March 17, 2016            /s/ _____
                                     JOHN W. DARRAH
                                     United States District Court Judge